IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GUESTHOUSE INTERNATIONAL FRANCHISE SYSTEMS, INC., ) ) ) Plaintiff, ) ) v. ) ) BRITISH AMERICAN PROPERTIES ) MACARTHUR INN, LLC, THOMAS F. ) NOONS, and EDWIN W. LESLIE, ) ) Defendants. ) ) | Case No. 3:07-0814 Judge Trauger |

## MEMORANDUM

Pending before the court are the defendants' Motion for Partial Reconsideration or Clarification of Order (Docket No. 100) and the plaintiff's Motion for Attorneys' Fees and Expenses (Docket No. 105).[1] For the reasons discussed herein, the court will deny the defendants' motion, grant the plaintiff's motion, and enter a final judgment for the plaintiff in the

---

[1] As with the court's February 5, 2009 Memorandum, a few points of clarification are important to make at the outset. First, while, for convenience purposes, this case has remained captioned in briefing and in this court's orders with "Guesthouse International Franchise Systems, Inc" ("Guesthouse") as the named plaintiff, this court has substituted Sumner Ventures, Inc., for Guesthouse, as the proper party in interest. (Docket No. 54.) Sumner Ventures and Guesthouse merged on January 1, 2008, with Sumner Ventures acquiring all shares of Guesthouse. (Docket No. 52 Ex. 1.) For convenience purposes and because all of the relevant events occurred when the plaintiff was known as "Guesthouse," the court will refer to the plaintiff as "Guesthouse." Second, when the court refers here to the filings of the "defendants" it is referring to the filings of defendants British American Properties MacArthur Inn, LLC ("BAP"), and Thomas F. Noons, as Edwin W. Leslie has not participated in the briefing of the motions presently before the court.

1

amount of $441,360.23.

## BACKGROUND

The court will presume basic familiarity with the facts and procedural history of this case involving a failed hotel franchise and related License Agreement and Promissory Note, as discussed in the court's February 5, 2009 Memorandum and Order. (Docket Nos. 97 and 98 respectively.) Through that Memorandum and Order, the court intended to resolve the pending, substantive matters in this case. Indeed, the court concluded that "BAP breached the License Agreement and the Promissory Note without a valid defense for doing so, and, therefore, BAP is liable on the License Agreement and the Promissory Note, and Noons and Leslie are liable as guarantors of BAP's obligations under the License Agreement and the Promissory Note." (Docket No. 97 at 18.)

The court also concluded that the defendants "owe $29,700.73 in unpaid fees due under the License Agreement for the period of time in 2006 that the hotel was operational [and also] ... owe $25,000 under the Promissory Note [and] ... Leslie and Noons are guarantors of those obligations." (*Id.*) The court further held that, under the License Agreement, the defendants (BAP, Leslie, and Noons) were liable for the plaintiff's liquidated damages, as well as the plaintiff's attorneys' fees and other costs related to pursuing this litigation. (*Id.* at 21, 23.)

At the time of the court's Memorandum and Order, the court could not make a specific award of attorneys' fees and other costs because the plaintiff had stated that "it will show 'reasonable fees and expenses ... by affidavit at the conclusion of these proceedings.'" (*Id.* at 23 citing Docket No. 65 at 20.) The plaintiff has submitted that affidavit in connection with its

2

pending motion for attorneys' fees and expenses.

As to the liquidated damages, the court found one provision in the relevant, multi-faceted, liquidated damages clause troubling. By way of review, the liquidated damages clause in the License Agreement provided that if BAP, without excuse, ceased to operate the hotel as a Guesthouse Inn during the period of the seven-year License Agreement, Guesthouse was entitled to terminate the License Agreement and recover, as liquidated damages, the total monthly operating fees and reservation fees owed to Guesthouse through the remaining term of the License Agreement. (*Id.* at 5, citing Docket No. 70 Ex. 8 at 17.) While, under the clause, the operating fees were to be calculated on a daily basis using the formula set forth in the License Agreement (Docket No. 70 Ex. 8 at A-1), the clause called for the reservation fees to be calculated by "multiplying the number of years remaining in the term of this Agreement (*rounding any partial years to the next whole number*) by the sum of the monthly Reservation Fees ... due ... during the one year period immediately preceding the notice of termination (annualized to the extent this Agreement was not in effect for the entirety of said one year period)." (*Id.* at 17-18.) (emphasis added).

Because there was no apparent justification for "rounding up" in calculating the reservation fees and because the plaintiff also claimed that it was entitled to all fees from the eight months that the hotel was operational (raising the prospect of a double recovery), the court concluded that, although the question was "close," the "rounding up" provision in the liquidated damages clause operated as a "penalty" in this case, and was, therefore, not enforceable under Sixth Circuit precedent. (Docket No. 97 at 21.) As is clear from the opinion, the court did not

3

hold that the entire liquidated damages clause was unenforceable – only the "rounding up" provision related to the reservation fees. (*Id.*)

Indeed, the court specifically instructed the parties to "resolve the precise amount owed" under the liquidated damages provision by calculating the operating fees as described in the License Agreement and by calculating the reservation fees based on the "'annualized' (or pro-rata) reservation fee for the first year multiplied by the 6+ years that remained on the License Agreement at the time of termination." (*Id.*) With all substantive issues resolved, the court removed this case from the trial calender, but stated that the "file shall remain open ... pending receipt by the court of notification that the parties have resolved all pending matters or need assistance of some kind from the court." (Docket No. 98.)

On February 20, 2009, the defendants moved for "Partial Reconsideration or Clarification" of the court's Memorandum and Order. (Docket No. 100.) The defendants argued that because, in their view, the court had concluded that the liquidated damages clause was unenforceable, "either plaintiff forfeits all right to the lost profits portion of its claim or at minimum, plaintiff is put to the burden of proving its actual damages resulting from the early termination of the franchise." (Docket No. 101 at 2.) The defendants further claimed that, by suggesting that the parties resolve their dispute based on the court's guidance, the court was putting them in the untenable position of "forego[ing] their right to contest damages and essentially settl[ing] ... ." (*Id.* at 4.)

The defendants also stated that the court should reconsider its ruling that the defendants' Tennessee Consumer Protection Act (TCPA) counterclaim was not viable as a "set-off," because,

4

according to the defendants, even though the court concluded that the TCPA claim was time-barred, "the long standing rule in Tennessee ... is that where set-off is specifically set forth in a plea, the statute of limitations cannot be relied upon to defeat such a claim." (Docket No. 101 at 8, citing *Alsbrook v. Hathaway*, 3 Sneed (TN) 454, 454, 1856 WL 2445 at *1 (Tenn. 1856)). The court ordered that the plaintiff respond to the defendants' motion.

On February 23, 2009, the plaintiff responded to the defendants' motion, arguing that the defendants' positions were without merit. (Docket No. 104.) Additionally, in contrast to its summary judgment briefing, the plaintiff provided a detailed calculation of the precise amount it believes it is owed under the liquidated damages clause (using the methodology discussed in the court's February 5, 2009 Memorandum). The plaintiff argued that, under the liquidated damages clause, it is owed $304,705.19, and the plaintiff reiterated that the court had already found that the defendants were liable for $25,000 under the Promissory Note and $29,700.73 in past due fees for the time period that the hotel was operational. (Docket No. 104 at 9.)

That same day, the plaintiff also filed its Motion for Attorneys' Fees and Expenses, attached to which was an affidavit from the plaintiff's counsel along with itemized and summarized lists of the expenses and fees that the plaintiff had incurred in prosecuting and defending this litigation. (Docket No. 106.) The plaintiff argues that, based on the court's February 5, 2009 Memorandum, it is entitled to $82,651.95 in attorneys' fees and expenses. (Docket No. 107 at 2.)

## ANALYSIS

The defendants have moved for partial reconsideration or clarification of the court's

5

February 5, 2009 Memorandum and Order, asserting that the court should reconsider its rulings related to (1) the applicability of the liquidated damages clause in the License Agreement and (2) the viability of the defendants' "set-off" argument as it relates to the defendants' TCPA claim. The plaintiff has moved, pursuant to the court's February 5, 2009 Memorandum and Order, for $82,651.95 in attorneys' fees and expenses. The court will address each motion in turn.

## I. The Defendants' Motion to Reconsider

The Court of Appeals for the Sixth Circuit has observed that the "Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders" but has provided that "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). While district courts have "significant discretion" in deciding motions for reconsideration, "[t]raditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 Fed. Appx. at 959 (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998). The defendants' motion is apparently based on the need to correct a clear error or prevent manifest injustice.

### A. Liquidated Damages

The defendants' argument regarding the liquidated damages clause rests on a flawed premise. The court did not, as the defendants argue, conclude that the liquidated damages clause,

6

as a whole, was unenforceable. The court concluded, partially because the plaintiff was apparently seeking a double recovery of reservation fees, that "the liquidated damages clause *here* operates as a penalty." (Docket 97 at 21.) (emphasis added). That is, based on all of the damages requested by the plaintiff, the lack of justification for "rounding up," and the strenuous arguments advanced by the defendants, the court concluded that permitting the plaintiffs to recover "rounded up" reservation fees was a step too far. The court clearly found that the liquidated damages clause, absent the "rounding up" provision, was enforceable, as the court directed the parties to apply the calculations described in the liquidated damages clause, only without "rounding up" for the reservation fees.[2] (*Id.*)

Additionally, the defendants provide no case law to support their implicit argument that the court may not strike one offensive provision of a multi-pronged liquidated damages clause and then apply the remainder. Indeed, as the plaintiff points out, this "is precisely the result" called for by the License Agreement's severability clause, which states that, if any "term" of the License Agreement is unenforceable, "all other terms ... shall remain unaffected to the extent permitted by law." (Docket No. 104 at 3 citing Docket No. 1 Ex. 1 at 20.) The Tennessee case

---

[2] The court did say that "there is no provision for any of the costs that Guesthouse saved as a result of the breach to be deducted, further indicating that this clause penalizes breach, rather than being designed to be a reasonable estimate of damage." (Docket No. 97 at 20.) The defendants point to this statement as indicating that the court did find that the clause, as a whole, was an unenforceable penalty. (Docket No. 101 at 2-6; Docket No. 109 at 2.) On further review, while the court squarely focused on its concern about the "rounding up" provision, it should have addressed only that concern, particularly in light of the controlling cases that the plaintiff pointed to in briefing, in which the courts enforced liquidated damages clauses that made no provision for the deduction of costs saved through breach. (See Docket No. 78 at 36, citing *Guiliano v. Cleo, Inc.*, 995 S.W. 2d 88, 98 (Tenn. 1999) and *Vanderbilt Univ. v. Dinardo*, 174 F.3d 751, 755-56 (6th Cir. 1999)).

7

law provided by the defendants, specifically the *Guiliano* and *Eatherly* cases, concern the enforcement, or lack thereof, of liquidated damages clauses generally and do not raise the issues presently before the court. *Guiliano*, 995 S.W. at 98; *Eatherly Const. Co. v. HTI Memorial Hosp.*, 2005 WL 2217078, *9 (Tenn. Ct. App. Sept. 12, 2005).

The defendants also cite a hodge podge of case law from other states in support of their position that, "where the clause is found to be a penalty, the case may [or should] be remanded for a trial on damages." (Docket No. 101 at 5 citing, among other cases, *Rogers v. Lockard*, 767 N.E. 2d 982 (Ind. Ct. App. 2002)). These cases, which are not controlling, do not concern striking only a portion of the liquidated damages clause, and one of these cases explicitly states that "the offending portion of a liquidated damage provision may be struck and other portions enforced if the contract contains a severability clause." *Caincare, Inc. v. Ellison*, 272 Ga. App. 190, 192 (Ga. App. 2005). In sum, the defendants' arguments regarding the applicability of the liquidated damages clause, in light of the court's February 5, 2009 Memorandum and Order, are without merit.

### B. Set-Off

The defendants also ask the court to reconsider the dismissal of the defendants' TCPA claim, because, the defendants argue, the claim remains viable as a properly pled "set-off." (Docket No. 101 at 6.) Specifically, the defendants argue that the court "should have considered the merits of the defendants' TCPA claims related to Guesthouse's grossly defective, unfair and deceptive UFOC" in spite of the fact that the court, supposedly, concluded that the TCPA claims related to the UFOC were time-barred. (*Id.* at 8.)

8

Again, the defendants misread the court's opinion. As the court stated, "as to the UFOC ... there is no allegation that anyone from BAP actually read the UFOC, which renders BAP's lengthy arguments about the supposed flaws in the substance of the UFOC irrelevant for purposes of its TCPA claim, as one requirement of any TCPA claim is that the allegedly deceptive act must have caused the party asserting the TCPA claim some injury." (Docket No. 97 at 15 citing *White v. Early*, 211 S.W. 3d 723, 743 (Tenn. Ct. App. 2006)). Then the court merely noted that defendant Leslie's allegation that he never received the UFOC might be grounds for a TCPA claim but that such a claim would be time-barred. (Docket No. 97 at 16.)

Therefore, the court's rejection of the defendants' TCPA claim, at least the part premised upon alleged substantive defects in the UFOC, was not based on the statute of limitations but was clearly based on causation. Further, the defendants have hardly shown that a TCPA claim is somehow saved from the operation of the statute of limitations when it is asserted as a set-off. Indeed, the defendants only cite one case, from 1856, in support of this proposition *Alsbrook v. Hathaway*, 1856 WL 2445 at *1 (Tenn. 1856). The *Alsbrook* case only states, "where the matter of the set-off is specially set forth in a plea, it being in the nature of a cross-action, the statute of limitations could not, perhaps, be relied upon, unless it were set up in replication." *Id.* A replication is "a reply made by the plaintiff in an action to the defendant's plea, or in a suit in chancery to the defendant's answer." BLACK'S LAW DICTIONARY, 1300 (6th Ed. 1990). Therefore, the *Alsbrook* opinion states that, when a set-off is asserted by the defendant, the statute of limitations might not be a valid defense to the set-off. Therefore, the defendants' lone, 153 year-old citation is hardly definitive on the issue.

9

As the plaintiff points out, more recent case law indicates that a claim, asserted as a set-off, is subject to the same statute of limitations rules as any other claim or counterclaim. (Docket No. 104 at 7 citing *Howard v. Abernathy*, 751 S.W. 2d 432, 434 (Tenn. Ct. App. 1998) ("a set-off must be a valid claim for which the defendant might have sued the plaintiff and recovered"); *Wood v. Cannon County*, 166 S.W. 2d 399, 401 (Tenn. Ct. App. 1942) ("the statute of limitations ... does run against an independent demand or cause of action, whether such cause of action be asserted by an independent suit or by a plea of set-off."). Again, this discussion is largely academic, because the court's rejection of the portion of the defendants' TCPA claim related to the allegedly "grossly defective, unfair and deceptive UFOC" was not premised on statute of limitations grounds in the first place. Therefore, the defendants' set-off argument is without merit.

### C. Damages Calculation

In light of the defendants' concerns that they will be perceived has having "settled" this matter if they agree to the amount owed under the liquidated damages provision, it is clear that the court should issue a final judgment as to the amount of damages owed. In its response brief, the plaintiff provides detailed calculations of both the operating and reservation fees owed under the License Agreement, which the defendants do not challenge in their reply brief and which the court has independently checked. The court finds that the plaintiff's calculations are accurate (with a few minor exceptions) and that the plaintiff's calculations properly follow the liquidated damages calculation methodology described by the court in its February 5, 2009 Memorandum and Order.

As to the operating fees, as the plaintiff correctly points out, these amounts are derived from the calculations described on page A-1 of the License Agreement and are based on the fact that the defendants defaulted on the License Agreement (and the plaintiff therefore terminated the License Agreement) with more than six years remaining on the License Agreement. That is, for each of the remaining years on the License Agreement (and the remaining portion of the first year), the yearly operating fee is calculated by taking the number of guestrooms at the hotel (103) and multiplying that number by a daily charge (ninety cents for year one, $1.05 for year two and $1.25 for years three through seven) and then multiplying that number by 365 for years two through seven or by the number of days that were remaining in the first year when the plaintiff terminated the License Agreement. (Docket No. 104 at 4 citing Docket No. 70 Ex. 8 at A-1.)

While the plaintiff claims that there were 123 days remaining in year 1 when the License Agreement was terminated, the record reflects that the hotel opened for business on February 1, 2006 and that the License Agreement was terminated on October 6, 2006, which means that there were 116 days remaining in the first year (24 October days, 30 November days, 31 December days, and 31 January days) when the License Agreement was terminated. (Docket No. 72 at 4-6.) Therefore, for year one, the proper multiplication is 116 x .90 x 103. When these yearly operating fees are calculated as described above and then added up, the total is $285,196.60, which is slightly less than the plaintiff's figure of $285,845.60, which was incorrectly based on the premise that there were 123 days remaining in year one when the License Agreement was terminated.

As to the reservation fees, using the invoices attached to Sumner Ventures CFO Bob

11

Marlowe's affidavit (Docket No. 63 Ex. 1), the plaintiff correctly shows that the reservation fees for the eight months that the hotel was operational were $1,985.22. (Docket No. 104 at 5.) When this number is "annualized," that is, multiplied by twelve and divided by eight, the "annualized" reservation fee is $2.977.83. Consistent with the court's Memorandum and Order, the total reservation fee owed is determined by taking this "annualized" number and multiplying it by the remaining term of the License Agreement, that is, 6.317 years, not the "rounded up" seven years. Based on this calculation, the total reservation fee owed is $18,810.95, or slightly less than the plaintiff's calculation of 18,859.59, which was, again, based on the false premise that there were four full months remaining in year one when the License Agreement was terminated. (Docket No. 104 at 5.) Therefore, adding together the owed reservation and operating fees, BAP, Leslie, and Noons will be jointly obligated for $304,007.55 under the liquidated damages clause.[3]

## II.    Attorneys' Fees and Expenses

On February 23, 2009, the plaintiff moved for attorneys' fees and expenses. (Docket No. 105.) By way of review, in its February 5, 2009 Memorandum and Order, the court concluded

---

[3] The court recognizes that, in the end, the impermissible "rounding up" would have added relatively little to the total damages owed. The defendants argue that, in light of this, the court's liquidated damages ruling would be rendered "meaningless" unless the court requires the plaintiff to actually prove its damages. (Docket No. 109 at 2.) The defendants ignore, however, that they advanced the "rounding up" argument as their principle basis for not enforcing the liquidated damages clause. (Docket No. 68 at 28-33.) The court saw merit in that argument and reached the logical conclusion, which was to strike the offending and, seemingly punitive, provision. Further, the court's decision here hardly "emasculate[s]" the February 5, 2009 ruling (Docket No. 109 at 3), as, in that decision, the court concluded that the plaintiff was entitled to a substantial amount of money under the liquidated damages clause and merely directed the parties, in some fashion, to agree on the precise amount – a directive that, of course, would not have waived the defendants' right to appeal the substance of the court's ruling.

12

that "paragraph twenty of the License Agreement and paragraph seven of the Guaranty Agreement provide that the plaintiff, as it has successfully prosecuted and defended this action, is entitled to attorneys' fees and costs related thereto from the defendants in this case. ... The defendants have offered no basis for the court not to enforce these provisions." (Docket No. 97 at 23.)

In support of its motion, the plaintiff submitted an affidavit from its lead counsel, Eugene Bulso. In his affidavit, Mr. Bulso states that the hourly rates charged by himself and other counsel for the plaintiff were reasonable and consistent with the prevailing rates charged by similar attorneys in Nashville, Tennessee. (Docket No. 106.) Additionally, attached to the affidavit, is a summary of the attorneys' fees and expenses that the plaintiff incurred in prosecuting this case. (Docket No. 106 Ex. 1.) Also, the plaintiff has provided its counsel's detailed time and expense records for this case. (Docket No. 106 Ex. 2.) Based on the time spent and the expenses incurred, the plaintiff moves for $82,651.95 in fees and expenses.

The defendants advance several arguments in response. First, they argue that the motion for attorneys' fees and expenses is "premature," because the court has not yet issued a final judgment. (Docket No. 110 at 1.) The defendants rely on Local Rule 54.01, but that rule states, in relevant part, that, unless otherwise provided by court order, a motion for attorneys' fees "shall be filed within thirty days" of the entry of final judgment in the case. Local Rule 54.01(b)(1). As the plaintiff correctly argues, this language does not preclude a motion for attorneys' fees earlier than thirty days after the entry of final judgment. Further, in its February 5, 2009 Memorandum, the court explicitly held that the plaintiff was only entitled to attorneys' fees and costs "to date."

13

(Docket No. 97 at 23.) Therefore, it was not untimely or premature of the plaintiff to move for attorneys' fees and expenses shortly after the court's Memorandum and Order was issued. Therefore, the defendants' argument that the motion is premature is without merit.

Second, the defendants argue that it would be inequitable to award any fees to the plaintiff, because, allegedly, the plaintiff violated the License Agreement provision that "requires that the dispute be mediated after the request of the non-filing party within 30 days of the commencement of suit against the non-filing party, *i.e.*, before the parties incur substantial attorney's fees." (Docket No. 110 at 3.) In their original answers, among many other things, the defendants did consent to mediation and demand "that this cause be abated until such time as mediation takes place and is either successful in resolving this case or not." (Docket Nos. 7 and 8.) The defendants go on to argue that the plaintiff refused to mediate, and, therefore, eliminated the "reasonable prospect the case would have settled, thereby avoiding either side's incurring large legal fees." (Docket No. 110 at 4.)

The defendants' mediation argument is without merit. First, this is an argument that should have been raised in summary judgment briefing, when the plaintiff first claimed that it was entitled to attorneys' fees under the License Agreement. Also, the defendants' argument that the plaintiff wrongfully prevented mediation is unsupported by the record, which contains two signed statements (one from February 2008 and one from June 2008), in which, in each statement, the defendants affirm that the parties had discussed whether mediation would be fruitful, but had, at that time, decided it would be not be worthwhile and that the case should continue to move forward. (Docket Nos. 27 and 51.) Also, there is simply no evidence from the record that the

14

defendants, outside of one statement in their answers, sought to abate this action so mediation could occur.

Third, the defendants argue that the plaintiff may not be due any fees at all, because, if the defendants were successful in convincing the court of the viability of their "set-off" argument, the defendants might emerge as the "prevailing party" in this litigation. (Docket No. 110 at 4.) As discussed above, the defendants' set-off argument is without merit, and the plaintiff is clearly the prevailing party.[4]

Fourth, the defendants argue that many of the items listed as litigation expenses in the plaintiff's filing are not recoverable, because they would not be recoverable as costs that the court could ordinarily, under its discretionary authority, tax under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920. (Docket No. 110 at 4-8.) However, there is no indication that the meaning of "costs" in paragraph twenty of the License Agreement and paragraph seven of the Guaranty Agreement is the same as the definition of "costs" under the rule and statute discussed above. Indeed, both contractual provisions broadly refer to "the costs" or the parties' costs ("its costs") incurred in prosecuting or defending the action, and there is no contractual limitation

---

[4]In a footnote, the defendants also argue that the attorneys' fee provision in the License Agreement is "one-sided ... only providing an award of attorney fees to Guesthouse if it prevails and no award to the victimized franchisee when it prevails. This lack of mutuality is shocking under the circumstances and should not be enforced as a matter of equity." (Docket No. 110 at 4.) This argument, again, should have been raised in summary judgment briefing, and, even at this late date, the defendants can direct the court to no law that states that such attorneys' fee provisions are unenforceable. While the court could certainly envision a circumstance where such a clause, combined with other factors, could be problematic, it is not so here, where, as discussed in the court's Memorandum and Order, sophisticated businesspeople were present on both sides.

15

imposed as to what those costs can be and certainly no reference to the rule or statute discussed above. Therefore, absent any indication that the parties, seemingly unnaturally, intended to limit the term "costs" to that found in the rule and statute addressed above, the court agrees with the plaintiff that "the parties plainly contemplated that the plaintiff would recover its attorneys' fees and out-of-pocket expenses incurred as a result ..." of the litigation. (Docket No. 112 Ex. 1 at 4.)

The court has reviewed the exhibits attached to Mr. Bulso's affidavit, which itemize what the court calculates to be $6,188.70 in expenses related to this litigation. As a general matter, the court finds that these expenses, which all appear to be related to legitimate and reasonable outlays for court costs, filing fees, copies, on-line research, deposition transcripts, travel and the like, to be appropriate expenses in light of the requirements of this litigation and fully recoverable from the defendants in this case under the language of the License Agreement and the Guaranty Agreement.[5]

Finally, the defendants claim that the attorneys' fees sought by the plaintiff are excessive. (Docket No. 110 at 9.) The defendants cite no law in support of their opinion, but, instead, cite

---

[5] The defendants argue that they should not be liable for the relatively slight "costs incurred for filing fees and courier services to obtain the judgment against the Leslie Family Trust in ... Tennessee Chancery Court," because these outlays are not specifically expenses of this suit. (Docket No. 110 at 7.) This argument is without merit because these costs (as discussed in a footnote below) are still associated with recovering the $25,000 owed under the Promissory Note, which arose out of the License Agreement and the franchise arrangement. Also, the defendants claim that they should not be liable for the costs of the deposition of defendant Noons, which, in the defendants' opinion, was unnecessary. (Docket No. 110 at 8.) Again, this argument is without merit. The court interprets the relevant clauses in the License Agreement and the Guaranty Agreement to make all signatories thereto liable for the reasonable costs incurred by the Licensor in pursuing this litigation, which would certainly include the costs involved in taking the deposition of one of the defendants/counter-plaintiffs in the case.

16

several expenses that they claim are "difficult to justify," including (1) that two junior associates at Mr. Bulso's former firm spent almost twenty-five hours on some discovery responses, (2) that Mr. Bulso billed for travel time to depositions and billed for motions that this court summarily denied, and (3) that plaintiffs' counsel spent almost seventy hours drafting and responding to the various motions for summary judgment. (Docket No. 110 at 10-11.) The defendants urge that, before the court enter any attorneys' fee award, the court conduct a hearing so that the plaintiff may be called to justify the time spent. (*Id.*)

While neither side provided any case law on the issue of excessive fees, the *Graceland Fruit, Inc., v. KIC Chemicals, Inc.*, 2008 WL 4949151 (6th Cir. Nov. 20, 2008) case provides a recent example of the Sixth Circuit confronting issues similar to those before the court. In *Graceland Fruit*, which was also a breach of contract case, the district court awarded $464,396.18 to the defendant in attorneys' fees, based on a provision in the relevant contract that allowed a party to recover "legal fees and expenses" arising from the litigation related to the contract. *Id.* at *2.

In analyzing whether the award was excessive in a case in which the plaintiff sought slightly under $800,000 in damages, the Sixth Circuit first noted that, when attorneys' fees are awarded pursuant to a valid contractual provision, the district court has ample discretion in determining the amount to award, but the court should ensure that the total award is not excessive and that the court is awarding fees for work actually performed and fees actually incurred. *Id.* at *4. To assist the court in making the proper determination, the fee applicant should maintain and submit billing time records. *Id.*

17

There are a broad range of factors that might be relevant to the consideration of whether a fee is excessive, such as (1) whether the hourly rate was reasonable for the market, (2) the novelty of the case, and (3) the level of skill required. *Id.* at *4-5. In each case, different factors will have different degrees of relevance and where, as in *Graceland Fruit* and here, the court has determined that attorneys' fees are generally appropriate pursuant to a contractual provision and the fee applicant has submitted detailed billing records, the court should primarily consider the specific arguments and objections of the non-movant to the fee applicant's proof. *Id.* at *5.

In *Graceland Fruit*, much like here, one argument was that the fee applicant should not recover the total amount of fees reported on the billing records because an "excessive [total] number of hours [were] billed" and because "duplicative efforts of multiple timekeepers" were reflected in the billing records. *Id.* In response to this complaint, the Sixth Circuit noted that movant's "counsel provided records and invoices detailing the work completed on behalf of [the client], thus satisfying the requirement to maintain billing time records ... Despite the fact that an extremely large sum of fees of over $400,000 was awarded in this case, we cannot say that such an amount was unreasonable given the nearly $800,000 worth of damages claimed ..." *Id.* at *6 (internal quotation and citation omitted).

As is evident from the *Graceland Fruit* decision, where the court has concluded that a fee applicant is generally entitled to fees and that applicant, such as the plaintiff here, submits detailed, complete records of the time expended on the case, and the non-movants' only response is to vaguely object that, to its eye, some of those fees seem, in hindsight, excessive, it is not improper to award the movant the full amount of the fees reflected in the records.

18

Such an award is appropriate in this case. Here, the plaintiff seeks $76,463.25 in attorneys' fees for about 282 hours of work, at an average rate of about $271 per hour. A substantial amount of this work, particularly during crucial summary judgment briefing, was performed by Mr. Bulso, who is now a named partner at his Nashville firm. Reasonably, almost half these fees were generated in November and December 2008, when the parties were briefing their lengthy and detailed cross-motions for summary judgment, and the plaintiff was forced to respond to two motions to strike filed by the defendants, motions that were plainly without merit. Further, another judge on this court recently noted that a $300 per hour fee for Nashville-based local counsel in a class action lawsuit was reasonable. *Carroll v. United Compucred Collections, Inc.*, 2008 WL 3001595, *4 (M.D. Tenn. July 31, 2008). In light of all of this, and the court's own experience with and knowledge of legal fees in this community, the plaintiff's fee application seems eminently reasonable.

Therefore, the court will award the plaintiff the full balance of the fees and expenses requested, that is, $76,463.25 in attorneys' fees and $6,188.70 in expenses, for a total of $82,651.95. Given the defendants' weak argument in briefing, the court sees no reason to conduct a hearing. Based on such a reasonable fee submission, it would be unfair to ask the plaintiff's lead counsel and his current and former colleagues to come back into court to parse the minutiae of a fee application that, in total, is reasonable and shows no evidence of overreaching.

## CONCLUSION

For the reasons discussed herein, the defendants Motion for Partial Reconsideration or Clarification will be denied, and the plaintiff's Motion for Attorneys' Fees and Expenses will be granted. The court will enter a final judgment for the plaintiff in the amount of $441,360.23, that is, $25,000 for the Promissory Note, $29,700.73 in past due fees, $304,007.55 in liquidated damages and $82,651.95 in attorneys' fees and expenses.[6]

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[6] In their brief in support of their motion for reconsideration, the defendants stated that, after the February 5, 2009 Memorandum and Order, the defendants learned that the plaintiff had obtained a judgment against defendant Leslie in Tennessee state court for the amount of the Promissory Note ($25,000) plus interest and fees. (Docket No. 101 at 2.) The defendants raised the possibility that the plaintiff would receive a "double recovery" and vaguely stated that "some disposition needs to be made in order to avoid a windfall to the plaintiff." (*Id.*) The plaintiff replied stating that it only obtained a judgment against the Leslie Family Trust, who, along with Leslie, was a signatory to the Promissory Note. (Docket No. 104 at 9.) The plaintiff stated that, to the extent it is ever able to obtain a recovery from the Leslie Family Trust, the defendants here would be entitled to a credit against the final judgment issued by this court. (*Id.*) Therefore, in sum, the court has correctly determined that the defendants are liable on the Promissory Note, and the plaintiff understands that he is entitled to only one recovery on that Note. Any further "disposition" is unnecessary.